CITIZENS' MUTUAL INSURANCE CO. ET AL. *v.* GREENWOOD
LIGON ET AL.

1. PARTNERSHIP. *Dissolution by death. Survivors continuing business.*
   Partners, who continue the business after a member's death, cannot bind his interest by giving notes in the firm name for a debt due before he died to partnership creditors, who have notice of the dissolution.

2. SAME. *Will. Executor's authority. Construction.*
   Power to continue a testator's estate in a mercantile firm, is not inferable from the executor's authority to manage and convey at discretion as trustee for the devisees, if the will contains no reference to the partnership.

3. SAME. *Estate of deceased. Subsequent debts.*
   If the executor continues the business with the surviving partners, the testator's interest is not liable for debts contracted after his death, nor is property owned by the firm before his death so appropriable in the first instance.

4. PARTNERSHIP.   *Personal liability of executor.*

    Whether permitting the testator's assets to remain in the firm without sharing in profits renders the executor personally liable as a partner, *quære ;* but he is so bound if he actively engages in conducting the business, in order to benefit the testator's estate.

5. SAME.   *Creditor's bill.   Parties.*

    For the protection of the testator's interest, his executor is a necessary party in such a case to a creditors' bill, to vacate a fraudulent assignment of the surviving partners and subject the firm assets.

6. SAME.   *Jurisdiction.   Lien.   Foreclosure.*

    Such creditors can maintain the bill, under Code 1880, §§ 1843, 1845, without having judgments, and obtain a statutory lien on the property conveyed, which is foreclosed in the same proceeding.

7. SAME.   *Retaining bill for full relief.   Personal decrees.*

    The Chancery Court, which has jurisdiction for this purpose, will grant full relief by entering personal decrees against the defendants for balances due after sale of the property subjected.

8. SAME.   *Disproof of jurisdictional allegation.   Effect at final hearing.*

    If, at final hearing, the assignment is sustained as not fraudulent, the complainants, who fail to maintain the only phase of their case which gives the Chancery Court jurisdiction, will be remitted to their legal remedies.

9. SAME.   *Receiver.   Appointment.*

    In a case of this character, no receiver should be appointed without evidence, if the bill states that the trustee in the assignment is incompetent and insolvent and that the deed is fraudulent, and answers denying these charges are filed by the trustee and some of the defendants, although others demur.

APPEAL from the Chancery Court of Chickasaw County. Hon. L. HAUGHTON, Chancellor.

The answers in this case denied the allegations of the bill that the assignment for creditors and the conveyance to Zelda Bean were fraudulent, and that Murray, the assignee, was incompetent and insolvent, and, upon the motion for the appointment of a receiver, which was heard on bill and answers at the same time as the demurrers, no evidence was introduced.

*Buchanan & Houston* and *Richard P. Deshon,* for the appellants.

1. A deceased person's estate is liable on a note given for his debt by his executor.   *Yerger* v. *Foote,* 48 Miss. 62.   The notes are as binding on the estate as if signed by the executor

by whose authority they were signed in the name of Meyers. *Woods* v. *Ridley*, 27 Miss. 119, 150 ; *James* v. *Hackley*, 16 John. 273 ; *Peter* v. *Beverly*, 10 Peters, 532, 567. If the estate is not liable on the renewal notes, it is on the original indebtedness. *Taylor* v. *Conner*, 41 Miss. 722 ; *Guion* v. *Doherty*, 43 Miss. 538 ; *Brown* v. *Broach*, 52 Miss. 536 ; *Robertshaw* v. *Hanway*, 52 Miss. 713 ; *Gleason* v. *Wright*, 53 Miss. 247 ; *Offutt* v. *Scott*, 47 Ala. 104 ; *Leach* v. *Church*, 15 Ohio St. 169 ; *Collier* v. *Leech*, 29 Penn. St. 404. The firm creditors can proceed in equity against the estate of the deceased member, without pressing the surviving partners to insolvency, though this bill avers that they are insolvent. To such a bill, the executor and the surviving partners are necessary parties, and, if lands of the firm or the testator are to be subjected, his heirs or legatees must be joined. *Dilworth* v. *Mayfield*, 36 Miss. 40 ; *Robertshaw* v. *Hanway*, *ubi supra*. It is immaterial, to the liability of the estate, whether there was authority in the will ; but such authority is evident from the vesting of the title in Ligon, with unlimited power to dispose of the property. *Yates* v. *Clark*, 56 Miss. 212 ; 1 Redf. on Wills, 420, 426.

2. As the notes were made in Meyers's name with Ligon's consent and by his authority, and the long continuance of the debt was caused by his representation that the estate was still liable and would be continued in the firm, Ligon is personally liable as a party to the renewal notes. *Yerger* v. *Foote*, 48 Miss. 62 ; *Brown* v. *Broach*, 52 Miss. 536 ; *Gleason* v. *Wright*, 53 Miss. 247. His representations, and those of the surviving partners, with his acquiescence as shown in the bill, constitute such a fraud as personally binds him. *George* v. *Bean*, 30 Miss. 147 ; *Hutchins* v. *Brooks*, 31 Miss. 430. If Ligon's fraud did not give the court jurisdiction as to him, yet having jurisdiction to enforce the appellants' demand against his co-debtors, it will retain the bill to give full relief. Code 1880, § 1843 ; *Scruggs* v. *Blair*, 44 Miss. 406 ; *Griswold* v. *Simmons*, 50 Miss. 123. As partner and executor he is liable on the notes given for an indebtedness of the old firm. But, if this is a debt of the new firm, Ligon, by continuing his testator's share in the business, rendered himself personally liable

as a dormant partner. *Wightman* v. *Townroe*, 1 M. & S. 412; *Labouchere* v. *Tupper*, 11 Moo. P. C. 198; *In re Land Credit Co.*, L. R. 8 Ch. 831; *Edgar* v. *Cook*, 4 Ala. 588; 1 Lind. Part. 687; Collyer Part. § 603; Parsons Part. 146; 3 Williams on Executors, 1791.

3. A receiver should have been appointed. The assignee is inexperienced, and is not competent to manage so complicated a business. He is insolvent and has executed no bond. If at final hearing the assignment should be declared fraudulent and void, and in the mean time the entire assets and moneys in the hands of the assignee, who is without financial responsibility, should have been distributed among the preferred creditors in accordance with the directions of the assignment, the court could not give relief to the appellants.

*Richard P. Deshon* and *W. T. Houston* made oral arguments.

*Houston & Reynolds* and *J. R. McIntosh*, for the appellees.

1. Ligon was not actually a partner, was not so held out to the world, and did not share in the profits. The business was conducted by the surviving partners, not by him. *Wightman* v. *Townroe*, 1 M. & S. 412; *Barker* v. *Parker*, 1 T. R. 287; *Owen* v. *Body*, 5 Ad. & El. 28; *Ex parte Garland*, 10 Ves. 110; *Richter* v. *Poppenhusen*, 39 How. Pr. 82; *Alsop* v. *Mather*, 8 Conn. 584; *Owens* v. *Mackall*, 33 Md. 382; 2 Lind. Part. 1060; Parsons Part. 493. If personally responsible, he is liable for those debts contracted after Meyers's death, and these were prior debts. If his statements concerning his power under the will are false, he may be liable in a special action, but not as partner. In either case, however, the remedy is at law.

2. Creditors of a partnership, without liens or judgments, cannot maintain a bill to subject the deceased partner's interest in the firm. *Freeman* v. *Stewart*, 41 Miss. 138; *Scruggs* v. *Blair*, 44 Miss. 406; *Hanway* v. *Robertshaw*, 49 Miss. 758; s. c. 52 Miss. 713; *Schmidlapp* v. *Currie*, 55 Miss. 597; *Roach* v. *Brannon*, 57 Miss. 490; 2 Lind. Part. § 1053. The power of a surviving partner does not extend to the giving of a note or accepting a bill in the firm name, after dissolution, for a pre-existing debt of the firm. *Scott* v. *Tupper*, 8 S. & M. 280; *Bank of Port Gibson* v. *Baugh*, 9

S. &. M. 290; *Brown* v. *Broach*, 52 Miss. 536; *Maxey* v. *Strong*, 53 Miss. 280; *Martin* v. *Kirk*, 2 Humph. 529; *Palmer* v. *Dodge*, 4 Ohio St. 21; *Stainback* v. *Read*, 11 Gratt. 281; *Cunningham* v. *Bragg*, 37 Ala. 436; *Myatts* v. *Bell*, 41 Ala. 222. The fact that Ligon allowed the testator's property to remain does not render it liable to subsequent creditors. *Hoyt* v. *Sprague*, 103 U. S. 613; 2 Lind. Part. 1060; Parsons Part. 424; Collyer Part. § 540. The fraud of Ligon does not bind or render liable the estate of Myers. *George* v. *Bean*, 30 Miss. 147; *Hutchins* v. *Brooks*, 31 Miss. 430; *Smith* v. *Ayer*, 101 U. S. 320. No authority to continue the business is in the will. Power to continue a partnership is never implied: it must be express. Even then the testator's general estate is not liable. *Hagan* v. *Barksdale*, 44 Miss. 186; *Jones* v. *Walker*, 103 U. S. 444.

3. The charge in the bill, that the assignment was made to hinder, delay, and defraud creditors, is denied positively and unqualifiedly in the answers of Houseman, Bean, and Murray. This denial cast upon the complainants the burden of proof of the allegations. No proof was made, and no relief of any kind should have been granted to the complainants. *Ligon* v. *Bishop*, 43 Miss. 527; *Vause* v. *Woods*, 46 Miss. 120; High on Receivers, § 416. The objections which are made in the bill to the qualifications of Murray as assignee, are fully met in the answers. His unfitness is denied, and his peculiar qualifications for the position averred. He was the clerk of the assignors, but in no way related to them. The selection of an assignee of doubtful competency is at most only a suspicious circumstance. Burrill on Assignments, §§ 91–93.

*R. O. Reynolds*, on the same side, argued orally.

Cooper, J., delivered the opinion of the court.

The complainants exhibited their bill in the Chancery Court of Chickasaw County, against Greenwood Ligon as executor of Simon Meyers deceased, and against him personally, and against him as trustee under the will of Meyers, for Mrs. Alice Foster and Mrs. Lelia Ligon, and as guardian for Kate and Lizzie Meyers, and against Morris Houseman, George W. Bean, Mrs. Zelda Bean, his wife, and Charles

G. Murray.   The bill charges, that on the 20th day of
April, 1878, the commercial firm of Meyers, Houseman &
Co. (composed of Simon Meyers, Morris Houseman, and
George W. Bean) was indebted to the firm of Sims, Billups
& Co., of Mobile, in the State of Alabama, in the sum of
sixteen thousand five hundred and sixty dollars and seventy-
two cents, and on that day Simon Meyers died testate ; that
by his will the testator appointed Greenwood Ligon his ex-
ecutor and guardian for his minor children, Kate and Lizzie
Meyers, and trustee for his two married daughters, Mrs. Foster
and Mrs. Ligon ; that the estate of said Meyers was by his
will given in equal parts to the four daughters named above
and to his other daughter Mrs. Zelda Bean, the wife of George
W. Bean, but that by the terms of the will, ".the title to the
property therein devised was vested in said executor, to be by
him managed and conveyed at his discretion for the benefit of
the said children of the testator."   It is further charged that
on the 24th day of April there appeared in a local paper, pub-
lished in the town where the business of Meyers, Houseman
& Co. had been conducted, a publication to the effect that the
firm would continue their business uninterrupted as thereto-
fore, of which publication Greenwood Ligon had full knowl-
edge, and which he permitted to remain uncontradicted, and
which notice came to the knowledge of Sims, Billups & Co.,
and other creditors of the firm of Meyers, Houseman & Co.
In addition to this publication, it is charged that the surviving
members of the firm wrote to Sims, Billups & Co., that, by an
arrangement with Ligon as executor, the business would be
conducted as formerly, and the estate of Meyers would con-
tinue in the partnership ; that the firm of Sims, Billups & Co.,
through Mr. Billups one of its members, applied to Green-
wood Ligon to ascertain if such was the fact, and was by him
informed that, by the will of Meyers, authority was given for
his estate to continue in the firm, and that it would be done.
After the death of Meyers, the firm continued doing business
as before with Sims, Billups & Co., and when, in 1880, the
firm of Sims, Billups & Co., was changed, by the withdrawal
of Mr. Billups, who was succeeded by G. W. Foster and T. R.
Ivy, the firm thus composed, who transacted business under

the name of Sims, Foster & Co., carried on without interruption the business with Meyers, Houseman & Co., as the old firm had done. The account of the latter firm, both before and after the death of Meyers, was one continuous running account, uninterrupted either by the death of Houseman or the change in the membership of the firm of Sims, Billups & Co. The bill charges that the debt due from Meyers, Houseman & Co., to Sims, Billups & Co., at the death of Meyers, was never paid, and that on the 24th of November, 1880, Meyers, Houseman & Co., being indebted to Sims, Foster & Co., as successors of Sims, Billups & Co., on account of said debt, in *renewal* of a part thereof, executed their promissory note payable to Sims, Foster & Co., for the sum of five thousand eight hundred and thirteen dollars and twenty-one cents, due and payable Jan. 1, 1881, at the Mobile Savings Bank in the city of Mobile, which note, before maturity and for a valuable consideration, Sims, Foster & Co., assigned to the Citizens' Mutual Insurance Company, one of the complainants; that subsequently, in renewal of the balance of the debt due at the death of Meyers to Sims, Billups & Co., Meyers, Houseman & Co. executed other notes payable in the future to Sims, Foster & Co., which notes before maturity and for valuable considerations were assigned by Sims, Foster & Co., to the other complainants. On the 2d day of February, 1881, the firm of Meyers, Houseman & Co., was insolvent, and on that day George W. Bean conveyed to Zelda Bean his wife a tract of land, and on the 8th day of April, Morris Houseman and George W. Bean, as surviving partners of the firm of Meyers, Houseman & Co., made an assignment of the partnership assets to the defendant, Charles G. Murray, as trustee for creditors of said firm. The bill further charges that all the assets of said firm were not conveyed, or intended so to be, by the said surviving partners; that the said firm was the owner of considerable real estate, the legal title of which was in the surviving partners and in the executor of Meyers; that Meyers himself, at the time of his death, was the owner of a large real and personal estate, which was liable to the payment of the creditors of the firm. The conveyance from the surviving partners to Murray it is charged was made to hinder, delay,

and defraud the creditors of the firm, as was also the conveyance from Bean to his wife. The prayer of the bill is that these conveyances may be set aside as fraudulent, and the property subjected to the payment of the complainants' debts ; that a personal decree may be rendered against Ligon as a member of the firm of Meyers, Houseman & Co., and one against him as executor of the estate of Meyers ; and that the real estate of Meyers may be sold for the payment of the debts, if the same shall not be paid by the proceeds of the personal estate. There is also a prayer for the appointment of a receiver to take charge of the assigned property, on the ground that Murray is insolvent, and is incompetent to manage the business committed to him in a manner calculated to benefit the creditors of Meyers, Houseman & Co. The bill was answered by Houseman and Bean, and by Mrs. Bean and Murray the assignee, and demurrers were interposed by Ligon as executor, trustee and guardian, and personally. The demurrers were sustained, and from decrees dismissing the bill as to Ligon personally, and as executor, guardian and trustee, and overruling the motion for the appointment of a receiver, this appeal is prosecuted.

We will first examine the demurrers interposed by Ligon as trustee, executor and guardian under the will of Meyers. The object of the bill, as against the representative of the estate of Meyers, is twofold : first, to charge the estate of Meyers with the debts ; and, secondly, to set aside the assignment made by the surviving partners, and to appropriate the property assigned to the payment thereof. The facts charged by the bill do not entitle the complainants to the payment of their claims from the estate of Meyers, for, by his death, the firm of which he was a member was dissolved, and thereafter the surviving partners had no authority to bind his estate by the execution of the notes sued on, even if they were given for a debt existing at the time of his death. For the purpose of liquidating the affairs of the firm, they were entitled to the possession of all its assets, to collect all debts due to the firm, and to pay all debts due by it. For the purpose of realizing funds for the payment of such debts, they could sell all the property of the firm. But beyond this they had no authority

as surviving partners to go; they could not incur obligations binding either on the personal estate of the deceased member, or upon his interest in the firm. They could discharge all existing obligations, but could not create new ones. The firm of Sims, Billups & Co., it is shown, had notice of the death of Meyers, and they were bound to know its legal effect. No authority was given by the will of Meyers to continue the partnership; there is no reference to it in his will, and the unusual powers conferred upon his executor were evidently given for the purpose of enabling him to convert the estate into money, without procuring from the Chancery Court orders authorizing him so to do. The varied character of the estate, the cost attending proceedings in the court for its sale, and the probability that it would in many cases be advisable to make private sales, were probably the considerations which led the testator to give to the executor almost unlimited power as to the disposition of his property; but from this cannot be inferred power to hazard the property by embarking it in mercantile business. As, therefore, there cannot be a recovery against the estate of Meyers on these notes, the action of the court below in sustaining the demurrer of Ligon as executor, trustee and guardian would have been correct but for the fact that he is a necessary party for the protection of the interest of the estate of Meyers in the assets of the firm of Meyers, Houseman & Co., if the assignment executed by Houseman and Bean shall be annulled for fraud. It is true that the surviving partners, Houseman and Bean, were by law clothed with the right of possession and property in the assets of that firm, but this possession and property were not absolute and unqualified, but limited and relative. The surviving partners held the property of the dissolved firm as *quasi* trustees. It was their duty to liquidate the business of the firm, and to account to the representative of Meyers for his interest remaining after the payment of the firm debts. They had no right to continue the business, hazarding the firm assets in the venture, and upon application of the executor, a court of chancery would have enjoined such action on their part. Though they have been permitted to continue the business, they have by so doing acquired no right to appropriate

the assets of the old firm to the payment of the debts con-
tracted since the death of Meyers, nor can the creditors in
such debts subject Meyers's interest in the assets to the pay-
ment of their claims.   It appears, from the allegations of the
bill, that the business was carried on for about two years after
the death of Meyers, and at the end of that time the firm was
insolvent, and thereupon an assignment was made, whereby the
property of both the old and the new firms was conveyed to
a trustee for the payment of the debts then due.   How much
of these debts was due or owed at the time of the death of
Meyers, or how much of the property assigned was the prop-
erty of the old firm, or how much was acquired after the
death of Meyers, is not shown.   If, therefore, the deed of
assignment shall be declared void, it is evident that it will be
necessary to separate the property of the old from that of the
new firm, as otherwise the property of the old firm would be
appropriated to the payment of the debts of the complainants,
which, as we have seen, are binding only on that acquired
since the death of Meyers.   It is thus seen that Ligon, as the
representative of the estate of Meyers, is not only a proper
but a necessary party to the bill, not for the purpose for which
he was joined by the complainants, — that a decree may be
rendered against him, — but because, as such representative,
he will, if the assignment is annulled, be entitled to have with-
drawn from the operation of their claims the assets of the
old firm, until its business has been liquidated and the share
of Meyers in the surplus delivered to his representative.   The
fact that it is averred in the bill that the firm was insolvent
at the death of Meyers is immaterial, since in any event the
property then owned by it ought to be appropriated to the
payment of the debts then due, in order that Meyers's estate
may, to that extent, be relieved from liability.

· The demurrer interposed by Ligon personally ought not to
have been sustained.   When an executor or an administrator
embarks or continues the property of the estate in a partner-
ship, without directions from the Chancery Court or authority
in the will of the testator, he himself becomes personally liable
as a partner in the firm ; for, since the estate is not bound by
his unauthorized acts, he himself is, for the protection of those

who have dealt with it.   The bill charges that "because of the insolvency of the firm of Meyers, Houseman & Co., at the death of Meyers, it became a matter of great moment to the surviving partners, and to Ligon as executor, trustee and guardian, so to manipulate the affairs of said partnership as to relieve the estate of Simon Meyers of any portion of the indebtedness of said firm, and at the same time to enable it to retain its property intact, including the interest of Simon Meyers in the assets of said partnership.   That to this end the property and means of Simon Meyers were permitted to remain in said partnership, said notices were published to the world, and said notes given, and finally said assignment was made."   "Also that Ligon, upon being applied to by Mr. Billups for information, assured him that it was true that the estate of Simon Meyers would continue in the firm of Meyers, Houseman & Co., and that the will of Simon Meyers authorized him so to do, and that the business of Meyers, Houseman & Co., would be continued uninterruptedly, as it had been previously carried on," and it is also charged that "Greenwood Ligon is a partner of the firm of Meyers, Houseman & Co., and is liable for its debts."   In view of these allegations of the bill (which are of course admitted by the demurrer to be true), it becomes unnecessary to consider whether Ligon would or would not have been liable to the creditors of the new firm, or would have been bound by the notes executed by Houseman and Bean, if he had simply permitted the assets of his testator to remain in the firm, he himself taking no part in the management of its affairs and not participating in the profits ; for the substance of these allegations is, that he actively participated, either personally or through the agency of his partners, in conducting the business after the death of Meyers, for the purpose of producing a result beneficial to the estate of his testator.   Such participation, under all the authorities, made him a partner and liable to the creditors of the firm.   The assignment, though executed only by Houseman and Bean, transfers the property of the firm, and Ligon, being liable as a partner to the creditors of the firm, is a necessary party in this suit, by which it is attempted to subject this property to firm debts.   Though not in name a party to the assign-

ment, he is equally with the other partners interested in the appropriation of the property thereby conveyed.

The Chancery Court has jurisdiction in this cause, because of the alleged fraudulent character of the deed of assignment. Before the adoption of the Code of 1881, it was necessary for a creditor, seeking to subject to the payment of his debt property fraudulently conveyed by his debtor, first, to recover a judgment at law, and to either exhaust his remedy at law or to show the interposition of an obstacle to its enforcement which required the intervention of a court of equity for its removal. But by the Code, § 1843, it is provided that chancery courts " shall have jurisdiction of bills exhibited by creditors, who have not obtained judgments at law, or having judgments, have not had executions returned unsatisfied, to set aside fraudulent conveyances of property, or other devices resorted to for the purpose of hindering, delaying or defrauding creditors; and may subject the property to the satisfaction of the demands of such creditors, as if complainant had a judgment and execution thereon returned 'no property found.'" The object of this statute was to prevent the necessity of a creditor resorting first to a court of law, to recover a judgment, and then going into equity to secure its satisfaction. The effect of this section, in connection with § 1845, which provides that the creditor in such bill shall have a lien on the property described in the bill, from the filing thereof, except as against *bona fide* purchasers, before the service of process on the defendant, is to give to the attacking creditor a statutory lien on the property fraudulently conveyed, and a foreclosure thereof in the same proceeding in which it is established. We see no reason why the court having acquired jurisdiction for the purpose of affording this relief, should stop short of giving to the parties all the relief which their case requires, according to the well-settled rule of equity, that the court once having taken jurisdiction will not cease until full justice has been done. If therefore it shall appear that the conveyances attacked by the bill were fraudulently made, and the same shall be annulled by the court, there is no reason why it may not render a personal decree against the defendants, for any balance of the debt which may

remain unpaid, after the sale of the property subjected to its payment, just as would be done in the foreclosure of an ordinary mortgage. But if upon final hearing it shall be made to appear that the conveyances were not fraudulently made, then the complainants, having failed to maintain that phase of their case which alone gives jurisdiction to the court, ought to be remitted to the court of law to establish and enforce their demands.

The motion for the appointment of a receiver was properly overruled. The decree sustaining the demurrers is reversed, the demurrers are overruled, and the cause remanded, with leave to the demurrant to answer within sixty days after the mandate in this cause shall have been filed in the court below.

*Decree accordingly.*